**FILED**

JUL 3 0 2008

**Clerk, U.S. District and Bankruptcy Courts**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
*********************************************
DONALD S. JOHNSON,                    *
1101 Golf Course Drive                *
Mitchellville, MD  20721              *
                                      *
       Plaintiff                      *
                                      *
v.                                    *
                                      *
MICHAEL D. GRIFFIN, Administrator,    *
    NATIONAL AERONAUTICS and          *
    SPACE ADMINISTRATION,             *
    300 E Street, SW                  *
Washington, D.C.  20546               *
                                      *
    Defendant.                        *
*********************************************
```

Case: 1:08-cv-01316
Assigned To : Leon, Richard J.
Assign. Date : 7/30/2008
Description: Employ. Discrim.

JURY ACTION

## COMPLAINT - CIVIL RIGHTS

### (JURY TRIAL DEMANDED)

### I. JURISDICTION AND VENUE

1.    This is an action for declaratory relief, injunctive relief, back pay, compensatory damages and other appropriate relief, legal and equitable, brought by Plaintiff Donald S. Johnson to redress violations by the Defendant of Plaintiff's civil rights.  The jurisdiction of this Court is invoked to secure the protection of and to redress the deprivation of rights secured to Plaintiff by the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, (Supp. II. 1991) (hereinafter, "Title VII"), which provides for injunctive, equitable and other relief against discrimination in employment on the basis of race, religion, sex, national origin and color, and which also provides a cause of action for retaliation and reprisal.  The jurisdiction of this Court is also invoked under 28 U.S.C. § 1343, this being a suit authorized and instituted pursuant to the Civil Rights Act of 1964.

1

2.      This proceeding is instituted in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391, as the judicial district in which the cause of action arose and in which the Defendant, an agency of the United States Government, is located and doing business.

3.      This is a civil action and the amount in controversy exceeds $10,000 (Ten Thousand Dollars), exclusive of interest and costs.

## II.   PARTIES

4.      Plaintiff Donald S. Johnson is a Black male citizen of the United States who is an employee of the National Aeronautics and Space Administration, an agency of the United States government.

5.      Defendant is Michael D. Griffin, in his official capacity as Administrator of the United States National Aeronautics and Space Administration.

## III.   STATEMENT OF FACTS

6.      Plaintiff Donald S. Johnson  is an African American male who was born on September 28, 1947.

7.      Plaintiff began his employment with Defendant National Aeronautics and Space Administration ("NASA") as a GS-13 Equal Employment Opportunity Specialist in 1999.

8.      Plaintiff Johnson continues to occupy that position up to this time.

9.      As a GS-13 Equal Employment Opportunity Specialist, Mr. Johnson's primary duties consist of processing, adjudication, and disposition of individual and class action complaints of employment discrimination filed against NASA.

10.    In January 2003, Dorothy Hayden-Watkins began her employment with Defendant NASA.

11.    Hayden-Watkins was hired as Assistant Administrator in charge of the Office of Diversity and Equal Opportunity.[1]

12.    As Assistant Administrator, Hayden-Watkins reported directly to the Administrator of NASA.

13.    As Assistant Administrator in charge of the Office of Diversity and Equal Opportunity, Hayden-Watkins was the second-level supervisor of Plaintiff Donald S. Johnson.

14.    At the time Dorothy Hayden-Watkins was hired as head of Defendant NASA's Office of Diversity and Equal Opportunity, Brenda Manuel was Plaintiff Johnson's immediate supervisor.

15.    Prior to the arrival of Dorothy Hayden-Watkins at NASA, Plaintiff Johnson's documented job performances were always appraised as above standard.

16.    From the onset of her tenure as head of Defendant NASA's Office of Diversity and Equal Opportunity, Dorothy Hayden-Watkins was critical of the work of the office she supervised, and especially critical of the work of Plaintiff and other male employees.

17.    Hayden-Watkins was particularly critical of the number of employment discrimination complaints closed by the Office of Diversity and Equal Opportunity.

18.    On a number of occasions, at staff meetings, Hayden-Watkins made remarks to the effect that the male members of her staff were not performing their duties in an acceptable manner.

---

[1] At the time Hayden-Watkins came to NASA in January 2003, the division was called the Office of Equal Opportunity Programs. It was later changed to the Office of Diversity and Equal Opportunity, but there were no changes in the function of the office.

19.     More often than not, Hayden-Watkins directed her criticism towards Plaintiff Johnson and another male worker, Donald King, and Hayden-Watkins often treated both men in a manner considered disrespectful by Plaintiff Johnson and other employees.

20.     Over a very short period of time, Ms. Hayden-Watkins, who was Mr. Johnson's second-level supervisor, began taking some of Mr. Johnson's more significant duties away from him. For example, after Hayden-Watkins came on board, Mr. Johnson was excluded from providing training to other NASA centers, whereas, in the past, he had provided training in equal employment opportunity for NASA employees at various centers around the country.

21.     Part of Mr. Johnson's training duties were given to Veronica Hill, a younger female employee, who had less experience in EEO matters than Mr. Johnson.

22.     Part of Mr. Johnson's duties had also been to prepare policy statements and guidance on various subjects, such as violence in the workplace; these duties were also removed from Mr. Johnson's duty roster, and were assigned to Veronica Hill.

23.     Veronica Hill was a temporary employee, and Ms. Hayden-Watkins hired Ms. Hill into the Office of Diversity and Equal Opportunity as an excepted employee.

26.     Prior to the arrival of Hayden-Watkins to NASA, the ODEO staff had always received bonuses and recognition equity (awards) in a somewhat equal fashion; that is, the awards were given based on an employee's relative contribution to the work of the ODEO.

27.     Prior to the arrival of Hayden-Watkins to NASA, Plaintiff Johnson had always received a fair share of awards and bonuses.

28.     In early 2005, Plaintiff Johnson learned that Hayden-Watkins had awarded all of the female Equal Opportunity Specialists in the ODEO bonuses and awards of at least $3,500.00.

4

29.     In discussing the matter with the other males in the ODEO, Plaintiff Johnson learned that none of the males in the ODEO had gotten any bonus of any kind.

30.     In May 2004, Brenda Manuel, who was Plaintiff Johnson's immediate supervisor, retired.

31.     Prior to retiring, Ms. Manuel, pursuant to the regulations of NASA and the Office of Personnel Management, prepared an eleven-month performance appraisal for Mr. Johnson.

32.     The eleven-month performance appraisal prepared by Ms. Manuel for Mr. Johnson rated his performance as above-standard, commended Mr. Johnson for the significance of his contributions to the ODEO, in particular, and NASA, in general, and contained no negative remarks critical of Mr. Johnson's work.

33.     The official performance appraisal placed in Mr. Johnson's personnel file for the performance appraisal year ending June 2004, contained several negative remarks in it, and stated that Mr. Johnson's performance needed improvement.

34.     The official performance appraisal placed in Mr. Johnson's personnel file for the performance appraisal year ending June 2004, was rendered and signed by Barbara Spotts.

35.     At the time Plaintiff Johnson's 2004 performance appraisal year ended, Barbara Spotts had been at NASA for only eight months, and Spotts had been designated as Plaintiff's acting supervisor for only a month.

36.     At the time she rendered Plaintiff Johnson's 2004 performance appraisal, Barbara Spotts was a temporary employee at NASA.

37.     The 2004 performance appraisal rendered by Barbara Spotts for Mr. Johnson appraised Mr. Johnson's performance for the entire 2004 performance appraisal cycle.

5

38.    Dorothy Hayden-Watkins reviewed, approved, and signed the 2004 performance appraisal rendered by Barbara Spotts on Mr. Johnson.

39.    In the latter half of 2004, Mr. Johnson and Donald King, who was also being discriminated against by Dorothy Hayden-Watkins, had separate meetings with Ralph Suris, the NASA EEO officer, and James Jennings, the NASA Assistant  Administrator, to complain about the hostile environment to which they were being subjected by Dorothy Hayden-Watkins.

40.    Plaintiff Johnson and Donald King told Jennings on at least one occasion in 2004, that they believed that the hostile and disparate treatment that they were receiving from Hayden-Watkins was motivated by Hayden-Watkins' bias against males, especially Black males.

41.    On at least one occasion in 2004, and another occasion in February 2005, a delegation of four persons from the ODEO, including Plaintiff Johnson and Donald King, met with James Jennings to complain about the management style of Hayden-Watkins, in general, and, in particular, the rude and disrespectful manner by which Hayden-Watkins was treating Donald King and Plaintiff Johnson.

42.    Beginning in 2004, Hayden-Watkins began to conduct closed-door meetings with female members of the ODEO staff, and male members of the staff were excluded from the meetings.  Mr. Johnson was excluded from the meetings, even when the subject of the meeting was the cases Mr. Johnson was assigned to process.

43.    After Plaintiff Johnson had met James Jennings on several occasions in 2004 and 2005, Mr. Johnson sought EEO counseling in early 2005.

6

44.    In June 2005, an EEO counselor was appointed to counsel Plaintiff Johnson, and also, to counsel Donald King. .[2]

45.    At around the same time that Plaintiff Johnson was receiving EEO counseling, NASA appointed an independent consultant to investigate the Mr. Johnson and Donald King's allegations that they were being subjected to a hostile work environment by Hayden-Watkins.

46.    The contractor hired to investigate the allegations of Mr. Johnson and Donald King was MRF Consulting, of Rockville, Maryland.

47.    The MRF consultant assigned to conduct the investigation was Karen Billingslea.

48.    Ms. Billingslea conducted her investigation in August 2005, and found in the investigation that Dorothy Hayden-Watkins and her management team had "engaged in a pattern of offensive conduct that has created an abusive work environment."

49.    The MRF report of investigation conducted by Ms. Billingslea also recommended that disciplinary action be taken against Dorothy Hayden-Watkins.

50.    The MRF report of investigation was delivered to Christopher Jedrey on or about August 26, 2005.

51.    Mr. Johnson requested to see a copy of the MRF Consulting report, but Jedrey refused to allow Mr. Johnson to see the report, and refused to discuss it with Mr. Johnson.

52.    In order to eliminate some obvious conflicts of interest, Mr. Johnson's discrimination case was investigated by the U.S. Equal Employment Opportunity Commission.

---

[2]  The administrative process of appointing an EEO counselor for Plaintiff Johnson was necessarily protracted, because of the potential conflict of interest created by Mr. Johnson's relationship (often supervisory) with the NASA EEO counselors, who are all outside consultants.

53.     When the EEOC investigator requested a copy of the MRF Consulting report of
investigation on Mr. Johnson's case, NASA refused to give the EEOC investigator a true copy of
the MRF Consulting report.

55.     In late 2005 or early 2006, Mr. Johnson learned that the average amount of bonus
award received by ODEO female Equal Opportunity Specialists for the 2005 appraisal year was
more than $6,000.00, while Mr. Johnson only received a $300.00 bonus award.

56.     During the 2003-2004 performance years, Brenda Manuel, who was Plaintiff
Johnson's immediate supervisor, recommended that Mr. Johnson receive a promotion to the
grade of GS-14 Equal Opportunity Specialist.

57.     Plaintiff has sought promotion to GS-14 Equal Employment Opportunity
Specialist since 2003, but has not been successful in gaining promotion.

58.     Plaintiff Johnson has at all times relevant to this Complaint been qualified for
promotion, and at all times relevant to this Complaint, Mr. Johnson and Donald King were
assigned almost three times as many cases as any other Equal Opportunity Specialist working for
NASA.

59.     With the exception of Donald King, who also filed a charge of discrimination
against NASA, Mr. Johnson was assigned by Hayden-Watkins more than three times the number
of cases considered high-profile or complex cases than any other Equal Opportunity Specialist
working for NASA ODEO.

60.     Although NASA has failed and refused to promote Mr. Johnson to a GS-14 Equal
Opportunity Specialist position, NASA has promoted or upgraded almost every female Equal
Opportunity Specialist to GS-14 in the past year or so.

8

61.     There are only two persons with the same responsibilities as Mr. Johnson working as Equal Opportunity Specialists in the NASA headquarters ODEO who have not been promoted to GS-14.

62.     One of those persons is Mr. Johnson, and the other is a female who has been at NASA for less than 18 months, and who has far less experience in EEO than Mr. Johnson.

63.     Upon information and belief, the reason the female has not been promoted is because if NASA promotes the sole remaining female Equal Opportunity Specialist who is not a GS-14, it will have no reason not to promote Mr. Johnson.

64.     In May 2008, a promotional opportunity for upgrade to GS-14 Equal Opportunity Specialist was announced, but the vacancy was cancelled in early July 2008 after Mr. Johnson applied for the promotional opportunity and made the certification for the GS-14 "Best Qualified" list.

65.     Mr. Johnson sought counseling for the denial of promotional opportunity, but no counselor has been appointed for him, and thus, he has not been able to file a formal complaint regarding the most recent denial of promotion.

66.     The reason given by Dorothy Hayden-Watkins for her mistreatment of Mr. Johnson (and Donald King) was her belief that the ODEO Complaints Division was operating at an inefficient level, and that Donald King and Plaintiff Johnson were the primary reason for the inefficiency, and the actions she took in removing some of Plaintiff's duties, and changing Plaintiff's lines of supervision were designed to improve the performance of the ODEO Complaints Division in terms of processing and closing more cases.

67.    In 2002, the calendar year before Dorothy Hayden-Watkins came to NASA, the Office of Diversity and Equal Opportunity Complaints Division closed 66 cases, even though the Complaints Division had only five employees, including four Equal Opportunity Specialists.

68.    In the three years in which Hayden-Watkins was the NASA Assistant Administrator for Diversity and Equal Opportunity, the office never closed more than 49 cases, even though Hayden-Watkins increased the staff complement in the ODEO by five persons more than ODEO had between 1999-2002.

69.    In the first full year immediately after Hayden-Watkins left NASA, the ODEO closed 63 cases, even though the ODEO had three fewer people than it had during the peak years of Hayden-Watkins.

70.    Plaintiff Donald S. Johnson was discriminated against when he was subjected to a continuing hostile working environment and harassment from 2003 to 2006, and further, when he was subjected to disparate treatment in the terms and conditions of his working conditions, including having significant grade sustaining duties being  removed from his duty roster; being denied equal bonuses and awards in 2004 and 2005; being subjected to illegal and discriminatory performance appraisals; being excluded from meetings, and being denied the opportunity to conduct training sessions for NASA employees and field personnel; and being required to assume a heavier share of the caseload, including the more difficult cases, while similarly situated female employees were allowed to carry much lighter caseloads.

71.    Although much of the harassment and hostile environment ceased when Dorothy Hayden-Watkins left NASA,[3] some of the discrimination and retaliation have continued until the

_____

[3] Although it is believed that Hayden-Watkins left NASA because of misconduct, Plaintiff Johnson was assured by NASA officials that her removal had nothing to do with the findings of the investigation into the harassment and discrimination charges lodged against Hayden-Watkins by Mr. Johnson and Donald King.

present, and Mr. Johnson has still not been promoted, even though all other similarly-situated female Equal Opportunity Specialists have been promoted to GS-14.

## IV.   STATEMENT OF CLAIM

### A.   First Cause of Action: Discrimination—Hostile Environment

72.   Plaintiff alleges and re-alleges paragraphs 6-71 above, as if restated fully and separately herein.

73.   The effect of the Defendant's acts and practices as enumerated herein has been to intentionally deprive Plaintiff Donald S. Johnson of rights secured to him by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., because Defendant, solely because of Plaintiff's gender, has caused Plaintiff Johnson to be subjected to a continuing pattern of harassment and an abusive and hostile environment, with the result that Plaintiff suffered has been denied equal employment opportunities and Plaintiff has been caused to suffer mental anguish and emotional distress.

### B.   Second Cause of Action: Discrimination—Disparate Treatment

74.   Plaintiff alleges and re-alleges paragraphs 6-71 above, as if restated fully and separately herein.

75.   The effect of the Defendant's acts and practices as enumerated herein has been to intentionally deprive Plaintiff Donald S. Johnson of rights secured to him by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., because Defendant, solely because of Plaintiff's gender and protected activity, has deprived Plaintiff Johnson of equal opportunities in the terms and conditions of Plaintiff's employment, and has intentionally deprived Plaintiff of the same opportunity to receive grade sustaining assignments, promotional

opportunities, to receive accurate and lawful performance appraisals, and to receive bonuses and performance awards, as Defendant has provided to females. By said acts, Defendant has violated Title VII of the Civil Rights Act of 1964, as amended.

### C.    Third Cause of Action: Discrimination—Retaliation and Reprisal

76.    Plaintiff alleges and re-alleges paragraphs 6-71 above, as if restated fully and separately herein.

77.    Plaintiff alleges that, solely because of Plaintiff 's protected activity, Defendant has engaged in retaliatory conduct in violation of Plaintiff Johnson's rights secured to him by Title VII of the Civil Rights Act of 1964, as amended.

78.    Defendant has continuously denied Plaintiff a promotion to GS-14 Equal Opportunity Specialist, while at the same time promoting females who were no more qualified for promotion than Plaintiff.

79.    By said acts of retaliation, Defendant has violated Plaintiff's rights as secured to him by Title VII of the Civil Rights Act of 1964, as amended.

80.    As a result of the acts and practices complained of herein, Plaintiff Donald S. Johnson has suffered and is still suffering loss of income, wages, employment opportunities, promotion, benefits, personal and professional esteem, and Plaintiff has suffered and is still suffering mental anguish and emotional distress.

81.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs complained of herein, and Plaintiff is now suffering and will continue to suffer irreparable injury as a result of Defendant's acts and conduct as described herein. Unless Defendant is restrained by Order of this Court, Plaintiff will continue to suffer said irreparable injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays this Honorable Court to advance this case on the docket, order a jury trial, cause a hearing in this case to be in every way expedited, and upon such hearing to:

1. Issue a declaratory judgment that Defendant's acts and practices complained of herein violated Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, as amended.

2. Order Defendant to make Plaintiff whole for the discrimination and retaliation Plaintiff has suffered as a result of the acts and practices as described herein, and provide appropriate back pay, wages, and benefits in an amount to be shown at trial.

3. Grant Plaintiff a promotion to GS-14, retroactive to August 1, 2004, the grade level to which Plaintiff would have been entitled had there been no discrimination and retaliation, and grant Plaintiff the backpay, wages, and benefits he has been denied as a result of the discrimination he has suffered.

4. Grant Plaintiff an award of compensatory damages for each of Plaintiff's Claims herein to compensate him for the humiliation, emotional distress and loss of personal and professional esteem suffered by Plaintiff as a result of Defendant's intentional acts.

5. Grant Plaintiff his attorney's fees, costs and disbursements necessary to maintain this action.

6.  Retain jurisdiction over this action to assure full compliance with the Orders of this Court and with applicable law, and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance.

7.  Grant such other and further relief as the Court deems necessary and proper.

Respectfully submitted,

John Wesley Davis, # 931600
1111 14th Street, N.W.
Suite 820
Washington, D.C.  20005
202-408-1952
202-403-3495, facsimile machine
JWDALAW@aol.com

14

A 08-1316 RJL

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Donald S. Johnson | Michael D. Griffin, Administrator National Aeronautics and Space Administration |

8000

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)          88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John W. Davis
1111 14th Street, NW
Suite 820
Washington, DC 20005
202-408-1952

Case: 1:08-cv-01316
Assigned To : Leon, Richard J.
Assign. Date : 7/30/2008
Description: Employ. Discrim.

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 2 U.S. Government Defendant

○ 3 Federal Question
(U.S. Government Not a Party)

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ A. *Antitrust*

☐ 410 Antitrust

○ B. *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ C. *Administrative Agency Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ E. *General Civil (Other)*     OR     ○ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

③

| ○  G. *Habeas Corpus/ 2255* | ○  H. *Employment Discrimination* | ○  I. *FOIA/PRIVACY ACT* | ○  J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○  K. *Labor/ERISA (non-employment)* | ○  L. *Other Civil Rights (non-employment)* | ○  M. *Contract* | ○  N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Employment discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** 300,000.00 <br> **JURY DEMAND:** | Check YES only if demanded in complaint <br> YES ☒  NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  July 22, 2008      SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

---

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.