UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONALD S. JOHNSON,         )
                           )
        Plaintiff,         )
                           )
v.                         )
                           ) Civil Case No. 08-1316 (RJL)
CHARLES F. BOLDEN, JR.,    )
ADMINISTRATOR, NATIONAL    )
AERONAUTICS AND SPACE      )
ADMINISTRATION,            )
                           )
        Defendant.         )

## MEMORANDUM OPINION
(March 3/, 2010) [# 13]

Plaintiff, Donald S. Johnson ("Johnson"), brings this action against Charles F. Bolden, Jr. (the "defendant") alleging violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, by his employer, the National Aeronautics and Space Administration ("NASA"), for sex discrimination, retaliation, and a hostile work environment. Before the Court is the defendant's Motion for Summary Judgment. Upon consideration of the parties' pleadings, relevant law, and the entire record herein, the defendant's motion is GRANTED.

## BACKGROUND

Plaintiff is an African-American male who has been employed by NASA as a GS-13 Equal Opportunity ("EO") Specialist in the Complaints Division of the Office of Diversity and Equal Opportunity ("ODEO") at NASA Headquarters in Washington D.C.

since 1999.[1]  Compl. ¶¶ 6-8; Def.'s Mot. for Summ. J. ("Def.'s Mot.") Ex. A, Johnson Dep. 7:10-20, July 8, 2009.  In that capacity, Johnson's primary duties consist of processing, adjudication, and disposition of individual and class action complaints of employment discrimination filed against NASA.  Compl. ¶ 9; Johnson Dep. 7:21-8:18.  Over the years that Johnson has worked at NASA, his average caseload has remained constant, with approximately thirty complaints of discrimination at various stages of processing assigned to him at a given time.  Johnson Dep. 129:9-130:3.

In January 2003, Dr. Dorothy Hayden-Watkins joined NASA as an Assistant Administrator for ODEO and served as Johnson's third-level supervisor at all times relevant to the complaint.  Compl. ¶¶ 10-11; Johnson Dep. 12:20-13:1.  When Hayden-Watkins became head of ODEO, she addressed those areas of ODEO's work that needed to show improvement.  They included programmatic shortfalls and slow or inefficient processing of complaints.  *See* Def.'s Mot. Exs. C-E.  To that end, she formed an internal working group called Top Management Review Committee for Discrimination Complaints ("TMRC") to review the status of pending EO complaints, including the pace of processing.  *See* Def.'s Mot. Ex. F, Hayden-Watkins Dep. 39:10-15, July 12, 2006; *see also id.* Ex. I (first page of agenda for a TMRC meeting).  Hayden-Watkins also began the practice of outsourcing the majority of NASA training to contractors.  Johnson Dep.

---

[1]  Prior to 2003, ODEO was named the Office of Equal Opportunity Programs. Compl. ¶ 11 n.1.

2

120:14-121:3, 125:18-126:9. As a result, Johnson no longer had the opportunity to conduct training sessions himself, although he continued to contribute to the development of training materials. *Id.* 125:18-126:9; Compl. ¶ 20. This was the only change in plaintiff's responsibilities after the arrival of Hayden-Watkins. Johnson Dep. 8:19-9:25.

As it turned out, Johnson and Hayden-Watkins had no direct communication on a daily basis. Johnson Dep. 12:20-23. Based on their limited interactions, however, Johnson believed that Hayden-Watkins was unfairly critical of him and other male employees. *See id.* 42:16-48:24; Compl. ¶¶ 18-19. He also believed she excluded them from meetings, although he did not identify any meetings in particular that he was not allowed to attend. Compl. ¶ 42; Johnson Dep. 44:6-18. When his cases were discussed at TMRC meetings, Johnson felt like he was placed in a "hot seat" and that Hayden-Watkins would comment negatively on his processing of cases, although his primary complaint was the tone in which she purportedly addressed him. *See* Johnson Dep. 42:16-48:24. On one occasion, Hayden-Watkins made a comment during a senior team management meeting, which she characterized as "flippant," to the effect of men not being able to "multi-task" the way women can. Def.'s Mot. Ex. G, Hayden-Watkins Dep. 72:15-74:16, July 12, 2006. Johnson conceded, however, that Hayden-Watkins never made any derogatory or offensive comments regarding his sex or race. Johnson Dep. 73:16-19. Plaintiff's other complaints center on the amount of awards and bonuses he received, particularly in 2004 and 2005; what he perceives as improper and negative comments in

his performance appraisals rendered in 2004 and 2005; and his unsuccessful bid for a promotion to the GS-14 level. Compl. ¶¶ 26-29, 32-38, 55-65; Johnson Dep. 101:9-19.

According to Johnson, he and a group of ODEO employees met with James Jennings, NASA's Assistant Administrator, at least once each in 2004 and 2005, to complain about what they perceived as a hostile work environment created by Hayden-Watkins. Compl. ¶¶ 39-41; Johnson Dep. 86:17-90:2. In particular, they informed Jennings that they believed Hayden-Watkins was motivated by a bias against men, especially black men. Compl. ¶ 40; Johnson Dep. 88:13-18. On June 30, 2005, plaintiff initiated informal contact with an EEO counselor, alleging that "he was discriminated against because of his gender, race, age, and reprisal when, he was given a Performance Appraisal in June 2005, that diminished his job performance." Def.'s Mot. Ex. O. Johnson filed a formal complaint of discrimination against NASA on December 15, 2005. Def. Mot. Ex. P. This suit followed on July 20, 2008.

## ANALYSIS

Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment shall be granted when the record demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing same). In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (citing Fed. R. Civ. P. 56(e)).

Title VII of the Civil Rights Act prohibits the federal government from discriminating in employment on the grounds of sex. 42 U.S.C. § 2000e-16(a). This statute establishes two elements for an employment discrimination claim: "(i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). Until recently, when a plaintiff had not provided direct evidence of discrimination, the complex burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), governed the Court's analysis. Our Circuit has now simplified this procedural structure. *See Brady*, 520 F.3d at 493-94. Pursuant to *Brady*, if the employee has suffered an adverse action and if the employer has asserted a legitimate, nondiscriminatory reason for the action, then the Court should proceed to the question of discrimination *vel non*. *Id.* at 494. In that case, the Court "must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.* Johnson

identifies a litany of actions that he claims are adverse and stem from discrimination: exclusion from high profile work assignments; denial of bonuses and awards, particularly in 2004 and 2005; exclusion from meetings; denial of the opportunity to perform training; improper and unsubstantiated negative comments in performance appraisals from 2004 and 2005; and denial of promotion to the GS-14 level. Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") 2.

As an initial matter, several of the actions plaintiff challenges are not adverse, and thus any claims of discrimination stemming from them must fail as a matter of law. *See Brady*, 520 F.3d at 493. Our Circuit has made clear that the harm must be "'objectively tangible'" rather than "'purely subjective injuries.'" *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002)). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Brown v. Brody*, 199 F.3d 446, 456 (D.C. Cir. 1999). In other words, "not everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)). Here, plaintiff's complaints about lack of opportunity to provide training, exclusion from certain meetings (which he fails to identify), and exclusion from high profile assignments do not constitute adverse actions because none of these actions

amount to more than general dissatisfaction with his job. *See Forkkio*, 306 F.3d at 1130-31; *see also Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. Cir. 2002) ("Mere inconveniences and alteration of job responsibilities will not rise to the level of adverse action.") (internal quotation marks omitted).

In contrast, the plaintiff has identified adverse employment actions in his lack of promotion to the GS-14 level and the 2004 and 2005 bonus decisions. *See Stewart v. Ashcroft*, 352 F.3d 422, 427 (D.C. Cir. 2003); *Russell*, 257 F.3d at 819. Similarly, to the extent that his performance rating for the 2003-2004 performance year or the comments in the narrative portion of the appraisals from 2004 and 2005, which he perceives as unfairly negative, affected the amount of bonus that he received in 2004 and 2005, those performance appraisals may constitute adverse actions. *See Russell*, 257 F.3d at 818-19; *see also Brown*, 199 F.3d at 458 (suggesting that if a performance evaluation affected an employee's grade or salary, it may be considered an adverse action). With respect to his lack of promotion, however, Johnson has failed to identify a single GS-14 promotion that he sought prior to 2008, nor did he raise the issue of promotion at the administrative level during the relevant period of his Complaint. *See* Def.'s Reply Ex. B, Johnson Dep. 80:6-83:12, July 8, 2009. Thus, plaintiff has failed to exhaust his claim regarding the GS-14 promotion and cannot prevail on his claim of discrimination regarding this action. *See* 29 C.F.R. § 1614.105(a)(1) (2009).

Furthermore, with respect to the 2004 and 2005 bonus decisions and performance

appraisals, NASA has asserted a legitimate, non-discriminatory explanation: a prevailing view among management officials that deficiencies in plaintiff's performance were affecting the quality of his work product and, as a result, the amount of bonus that he would receive. Hayden-Watkins identified the *M.B.* case, in which NASA lost its chance to appeal a finding of discrimination because of Johnson's administrative mishandling of the hearing file, as an example of Johnson's unsatisfactory performance. *See* Hayden-Watkins's Dep. 49:11-51:2; *see also id.* Exs. J-K. She further testified that she did not have enough day-to-day contact with Johnson to recommend him for an award and that she would have relied upon a work group recommendation to determine his bonus amount. Hayden-Watkins's Dep. 12:21-13:13, 14:5-15:13.

Johnson has offered no evidence in response to indicate that NASA's reasons are a pretext for discrimination. His appraisals included positive language in addition to job-related constructive criticism, as would be expected in performance evaluations. *See, e.g.,* Def.'s Mot. Ex. M ("Although Mr. Johnson has exhibited a thorough working knowledge and understanding of the federal employment laws, it is recommended that he assume more personal accountability for his assignments and be solely accountable for his work products. Additionally, Mr. Johnson needs to develop a heightened sense of urgency for completion of his assignments."). The record also reflects that other male EO Specialists in other ODEO divisions received large bonuses, *see* Pl.'s Opp'n Ex. 9, and that the other male employee in Johnson's ODEO division was promoted to GS-15 during

Hayden-Watkins's tenure with her approval, *see* Def.'s Reply Ex. A, King Dep. 13:1-15, Sept. 23, 2009. It is clear that Johnson was subjected to the defendant's standard evaluation process and that his bonus and award amounts were determined according to that process. It is not the job of the Federal Courts to reevaluate these determinations absent any evidence of discrimination. *See Holcomb*, 433 F.3d at 897 ("We have consistently declined to serve as a super-personnel department . . . .") (internal quotation marks omitted). Johnson has failed to produce sufficient evidence for a reasonable jury to find that NASA's true motivation was discrimination and, as a result, his discrimination claim must fail. *See Brady*, 520 F.3d at 494.

Title VII also makes it unlawful "for an employer to discriminate against any of his employees . . . because [an employee] has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). As in discrimination cases, if the employer offers a legitimate, nondiscriminatory reason for its action, a court should proceed to the question of retaliation *vel non*. *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009). "To prove retaliation, the plaintiff generally must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008). Here, Johnson asserts that he suffered materially adverse actions in the form of his performance

appraisal for the year ending in July 2004 and the amount of bonus he received in 2004, which was made effective August 17, 2004. *See* Pl.'s Opp'n 20-23; Pl.'s Opp'n Ex. 9. He predicates his retaliation claim on two activities: (1) his recommendation of a finding of discrimination in the *S.J.* case, a recommendation that was ultimately adopted by Hayden-Watkins, *see* Johnson Dep. 105:6-19, 108:1-10, and (2) contact with Jennings in June 2004 to complain about perceived harassment by Hayden-Watkins, *see id.* 105:20-106:11. Neither is sufficient!

Plaintiff's retaliation claim fails for several reasons. First, there is *no* evidence in the record that Johnson's recommendation, which he made in his role as an EO Specialist, constituted opposition of an unlawful employment practice, and thus protected activity, especially given that his supervisors concurred in the recommended finding. *See id.* 26:10-33:2, 106:16-24. Plaintiff essentially concedes this point in his opposition. *See* Pl.'s Opp'n 19-20 ("Defendant may be correct in this assertion."). Second, plaintiff cannot establish any causal connection between his meeting with Jennings in June 2004 and the challenged actions taken by Hayden-Watkins. Plaintiff admits that he has no evidence, aside from his own speculation, that Hayden-Watkins had any knowledge of those meetings or that plaintiff suffered any adverse action as a result. *See* Pl.'s Opp'n 20 ("It is not known what, if anything[,] Jennings did about Plaintiff and Mr. King's complaints to him, but there was no relief in sight for the harassment."); Johnson Dep. 105:20-106:7. In addition, the mere proximity of two and a half months between

plaintiff's June 2004 meeting with Jennings and the alleged adverse actions is insufficient to demonstrate causality. *See Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009). Absent any evidence of a causal connection, there is no genuine issue of material fact regarding the alleged retaliation, and Johnson's retaliation claim must fail. *See Baloch*, 550 F.3d at 1198.

Finally, in determining whether a work environment is a hostile work environment, courts consider: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (internal quotation marks omitted). The Supreme Court has emphasized that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Id.* at 788 (internal quotation marks omitted). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). In this case, the distinct, disparate acts alleged by plaintiff, even when considered cumulatively, are not sufficiently "extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

First, Johnson acknowledges that his interactions with Hayden-Watkins were limited. *See* Johnson Dep. 42:16-20, 44:6-18. Second, nearly all of plaintiff's allegations of a hostile work environment, even if taken as true, amount to nothing more than plaintiff's objections to the management style of Hayden-Watkins and Barbara L. Spotts, who was also part of his chain of command. *See id.* 45:15-46:11 (admitting Hayden-Watkins used no pejoratives or denigrating terms but characterizing her tone as "negative," "harsh," "unkind," and "dismissive"); Pl.'s Opp'n at 23-24 (complaining that he and the other male employee in his division were doing "most of the important work" but "getting no credit"). Even taking into account comments such as men not being able to multi-task or, as Johnson wildly claimed, an implied racial slur that he read into one comment by Spotts, *see* Johnson Dep. 73:20-74:23, his complaints simply fail to rise to the level of severity necessary to constitute a legitimate hostile work environment claim. *See Freedman v. MCI Telecomms. Corp.*, 255 F.3d 840, 848 (D.C. Cir. 2001) (finding a supervisor's "nasty" attitude and "a singular stray comment" insufficient to establish a hostile environment). In short, no reasonable juror would find plaintiff's situation hostile or abusive. Accordingly, his hostile environment claim must also fail. *See Faragher*, 524 U.S. at 788.

## CONCLUSION

In sum, this is a classic example of a Title VII case that has no business in the Federal Courts. How ironic that it is being pursued by an EO Specialist who probably

should know better. Hopefully in the future, Congress, the Executive, and the Courts will figure out a way to resolve these cases before they are added to our already crowded docket.

In the meantime, for all of the foregoing reasons, the Court GRANTS the defendant's Motion for Summary Judgment and DISMISSES the action in its entirety. An order consistent with the Court's ruling accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge